**2024-1388**

---

**IN THE**
# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

David Scott Brimer,

*Petitioner*,

v.

Department of the Navy,

*Respondent*.

---

**Petition for Review from the Merit Systems Protection Board in Case No. AT-3330-21-0119-I-1**

---

## OPENING BRIEF OF PETITIONER DAVID SCOTT BRIMER

---

Daniel C. Cooley
J. Derek McCorquindale
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700

Jason L. Romrell
Alexander E. Harding
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Petitioner David S. Brimer*

May 6, 2024

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF INTEREST**

**Case Number:** 2024-1388

**Short Case Caption:** Brimer v. Navy

**Filing Party/Entity:** David Scott Brimer

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: May 6, 2024

Signature: /s/Daniel C. Cooley

Name: Daniel C. Cooley

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☒ None/Not Applicable |
| David Scott Brimer | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this **court** for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☒ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... vii

STATEMENT OF RELATED CASES .......... xii

STATEMENT OF JURISDICTION .......... 1

I. STATEMENT OF THE ISSUES .......... 2

II. INTRODUCTION .......... 2

III. STATEMENT OF THE CASE .......... 5

A. The Statute at Issue .......... 5

B. The Navy Erroneously Failed to Consider Mr. Brimer's Application for the Position of Assistant Human Resources Officer (GS-14) .......... 6

C. Proceedings Before the Board .......... 8

1. The Administrative Judge's Initial Decision Dismissed Mr. Brimer's Opportunity-to-Compete Claim .......... 8

2. The Final Order Modified the Reasoning and Concluded that Mr. Brimer's § 3304 Claim Failed as a Matter of Law Under *Oram* .......... 9

IV. SUMMARY OF ARGUMENT .......... 10

V. STANDARD OF REVIEW .......... 12

VI. ARGUMENT .......... 12

A. Section 3304(f)(1)'s Right to Compete Covers Federally Employed Veterans Like Mr. Brimer .......... 12

1. The Text of § 3304(f)(1) Covers Veterans Without Any Qualification on Employment Status ................................13

2. The Overall Structure of § 3304 and Related Provisions Also Confirm that It Covers Veterans Without Qualification on Their Employment Status ................15

3. As Shown in the Legislative History, Congress Specifically Enacted the VEOA to Protect Both Employed and Non-Employed Veterans ..................................17

4. Prior Precedents Agreed that § 3304(f)(1) Protects Federally Employed Veterans....................................................20

a. The Board Interpreted § 3304(f)(1) to Protect Federally Employed Veterans ........................................20

b. This Court Likewise Interpreted § 3304(f)(1) to Protect Federally Employed Veterans ............................22

B. *Oram* Was Wrong to Broadly Read *Kerner* to Foreclose 5 U.S.C. § 3304(f)(1) for Every Federally Employed Veteran ..........................................................................................24

1. *Oram* Incorrectly Found that § 3304(f) Does Not Protect Veterans in the Civil Service.........................................27

2. *Oram* Misinterpreted *Kerner,* a Case About Preferential Treatment, as a Case About the Right to Compete ..........................................................................................29

3. *Kerner* Could Not Have Overturned This Court's Previous Decisions Assuming § 3304(f)(1) Covers Federally Employed Veterans....................................................32

C. To the Extent *Kerner* Actually Held that § 3304(f)(1) Never Applies to Federally Employed Veterans, It Must Be Clarified or Overruled ..........................................................................33

1. *Kerner* Does Not Analyze the Plain Language of § 3304(f)(1) ..........................................................................34

2. The Portions of the VEOA Cited in *Kerner* Make No Qualifications Regarding Employment Status..........................35

3. The VEOA Covers Non-Employed Veterans, but That Does Not Make It Exclusive to Those Veterans.......................38

4. For Purposes of Resolving the Case at Hand, If Overruling *Oram* Is Insufficient to Clarify *Kerner*, then *Kerner* Must Also Be Overruled.......................................40

VII. CONCLUSION..........................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrus v. Glover Constr. Co.*,
446 U.S. 608 (1980)....................14

*Associated Elec. Coop., Inc. v. United States*,
226 F.3d 1322 (Fed. Cir. 2000)....................13

*Brogan v. United States*,
522 U.S. 398 (1998)....................16

*Brown v. Dep't of Veterans Affs.*,
247 F.3d 1222 (Fed. Cir. 2001)....................30

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979)....................40

*Carter v. United States*,
530 U.S. 255 (2000)....................36

*Cheeseman v. Off. of Pers. Mgmt.*,
791 F.2d 138 (Fed. Cir. 1986)....................12

*Crandon v. United States*,
494 U.S. 152 (1990)....................13

*Gingery v. Dep't of Veterans Affs.*,
No. CH-3330-09-0712-I-1, 2010 WL 2505595 (MSPB June 16, 2010)....................21, 28

*Graybill v. U.S. Postal Serv.*,
782 F.2d 1567 (Fed. Cir. 1986)....................12

*Jolley v. Dep't of Homeland Sec.*,
No. AT-3443-06-0447-I-1, 2007 WL 809507 (MSPB Feb. 21, 2007)....................21, 22, 28

*Joseph v. FTC*,
505 F.3d 1380 (Fed. Cir. 2007) ....................................................22, 23, 26

*Keene Corp. v. United States*,
508 U.S. 200 (1993).......................................................................................16

*Kerner v. Dep't of the Interior*,
778 F.3d 1336 (Fed. Cir. 2015) ...........................................................*passim*

*Kievenaar v. Off. of Pers. Mgmt.*,
421 F.3d 1359 (Fed. Cir. 2005) ..................................................................12

*Lazaro v. Department of Veterans Affairs*,
666 F.3d 1316 (Fed. Cir. 2012) ..................................................................24

*Lynch v. Alworth–Stephens Co.*,
267 U.S. 364 (1925).......................................................................................15

*Lynch v. Department of Defense*,
347 F. App'x 583 (Fed. Cir. 2009) ..........................................23, 26, 32

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
583 U.S. 366 (2018).......................................................................................36

*Newell Cos. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988) ....................................................................32

*Oram v. Department of the Navy*,
No. DC-3330-17-0755-I-1, 2022 WL 3971523 (MSPB Aug. 31,
2022) ................................................................................................*passim*

*Ross v. Blake*,
578 U.S. 632 (2016).......................................................................................20

*Russello v. United States*,
464 U.S. 16 (1983).........................................................................................16

*Shapley v. Dep't of Homeland Sec.*,
No. AT-3443-07-0829-I-1, 2008 WL 4271114 (MSPB Sept. 17,
2008) ...........................................................................................21, 28

*Sigmon Coal Co. v. Apfel*,
226 F.3d 291 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ....................40

*Styslinger v. Dep't of Army*,
No. DA-3443-06-0168 I1, 2007 WL 806924 (MSPB Feb. 22, 2007) ....................21, 28

*United States v. Brockamp*,
519 U.S. 347 (1997) ....................14

*United States v. Hernandez*,
655 F.3d 1193 (10th Cir. 2011) ....................39

*United States v. Mo. Pac. R. Co.*,
278 U.S. 269 (1929) ....................35

*United States v. Turkette*,
452 U.S. 576 (1981) ....................34

*Van Buren v. United States*,
593 U.S. 374 (2021) ....................19

*Walker v. Dep't of the Army*,
No. AT-344305-0538-I-1, 2006 WL 3475476 (MSPB Nov. 27, 2006) ....................13

**Statutes**

5 U.S.C.A. § 2108 ....................14

5 U.S.C.A. § 2108(1) ....................14

5 U.S.C.A. § 2108(3) ....................14

5 U.S.C.A. § 2302 ....................38

5 U.S.C.A. § 2302(b)(4) ....................8

5 U.S.C.A. § 3330a ....................39

5 U.S.C.A. § 5596 (b)(1) ....................16

5 U.S.C. § 3304(d) ....................16

5 U.S.C. § 3304(f) ........................................................ *passim*

5 U.S.C. § 3304(f)(1) ........................................................ *passim*

5 U.S.C. § 3304(f)(3) ........................................................ 5, 23

5 U.S.C. § 3304(f)(4) ........................................................ *passim*

5 U.S.C. § 3304(g)(4) ........................................................ 16

5 U.S.C. § 3309 ........................................................ 5, 15, 25

5 U.S.C. § 3311 ........................................................ *passim*

5 U.S.C. § 3327 ........................................................ 17, 37

5 U.S.C. § 3327(b)(1) ........................................................ 37

5 U.S.C. § 3330a(1)(A) ........................................................ 1, 8

5 U.S.C. § 3330a(a)(1)(B) ........................................................ 1, 28

5 U.S.C. § 7703(c) ........................................................ 12

38 U.S.C. § 1295(a)(9) ........................................................ 1

Employment Opportunity Act ........................................................ 35

Veterans Employment Opportunities Act of 1998,
Pub. L. No. 105–339, 112 Stat 3182 ........................................................ *passim*

Veterans' Preference Act of 1944, Pub. L. No. 78-359, ch. 287, 58
Stat. 387 ........................................................ *passim*

**Regulations**

5 C.F.R. § 330.101 (2007) ........................................................ 25

5 C.F.R. § 332.101 (2007) ........................................................ 25

5 C.F.R. § 335.103 (2007) ........................................................ 25

5 C.F.R. § 337.101(b) ........................................................ 25

**Rules**

Fed. Cir. Rule 32(b) ........................................................................................43

Fed. Cir. Rule 32(b)(1)......................................................................................43

Federal Rule of Appellate Procedure 32(a)(5)........................................................43

Federal Rule of Appellate Procedure 32(a)(6)........................................................43

Federal Rule of Appellate Procedure 32(a)(7)(A)....................................................43

Federal Rule of Appellate Procedure 32(f)..............................................................43

**Other Authorities**

143 Cong. Rec. 14,682 (1997) (statement of Sen. Hagel)........................................39

143 Cong. Rec. S7603-07 (daily ed. July 16, 1997)..................................................5

144 Cong. Rec. 24,806 (1998) (statement of Rep. Mica)..........................................38

144 Cong. Rec. H10189 (daily ed. Oct. 8, 1998) ....................................................18

H.R. Rep. No. 105-40(I) ........................................................................................19

S. Rep. No. 105-340..........................................................................................17, 18

S. Rep. No. 105-340 (1998).......................................................................................5

## STATEMENT OF RELATED CASES

No other appeal in or from this action was previously before this or any other appellate court.

Counsel knows of no other case pending in this Court or any other court that may directly affect, or be directly affected by, the Court's decision on appeal.

## STATEMENT OF JURISDICTION

This appeal is from a Final Order of the Merit Systems Protection Board issued November 30, 2023, in Case No. AT-3330-21-0119-I-1 finding that 5 U.S.C. § 3304(f)(1)'s right to compete does not apply to veterans who are already federal civil employees, such as Petitioner. Appx1-12. The Board had jurisdiction to render that decision under 5 U.S.C. § 3330a(a)(1)(A)-(B).

Petitioner filed a timely petition for review on January 16, 2024. This Court has jurisdiction under 38 U.S.C. § 1295(a)(9).

## I. STATEMENT OF THE ISSUES

Did the MSPB ("Board") err by broadly excluding veterans employed in the federal civil service from the right to compete included in the Veterans Employment Opportunities Act of 1998 ("VEOA"), where (1) Congress included no qualifications about a veteran's employment status in the statute, (2) Congress passed the VEOA to prevent agencies from singling out veterans for removal from the Federal workforce, and (3) this Court and the Board routinely treated the VEOA as covering federally employed veterans for over a decade before *Oram*?

## II. INTRODUCTION

Under 5 U.S.C. § 3304(f)(1), "[p]reference eligibles or veterans who have been separated from the armed forces under honorable conditions after 3 years or more of active service *may not be denied the opportunity to compete for vacant positions* for which the agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures." 5 U.S.C. § 3304(f)(1) (emphasis added). Congress included this provision as part of the VEOA to ensure that agencies could not discriminate against veterans when it comes to employment opportunities. *See* S. Hrg. No. 105-949, at 6, 4 (1998) (statements of Rep. Mica and Rep. Cleland). When the VEOA was passed in 1998, Congress lamented that veterans were "the last hired and the first fired." *Id.* at 7 (statement of Rep. Mica).

This appeal presents a simple and important question: Is the protection afforded by § 3304(f)(1) available to veterans whose right to compete for positions is infringed during their tenure as employees in the federal civil service? For almost twenty years after the VEOA was passed, the answer to that question was "yes." *See infra* Section VI.A.4.

In this case, it is undisputed that the Department of the Navy failed to consider an application by veteran David Scott Brimer for the position of GS-14 Assistant Human Resources Officer before it filled the vacancy with someone else. Appx2-3 (final decision noting that "the agency mistakenly believed that he did not submit documents reflecting that he met the time-in-grade requirement for the position").

When Mr. Brimer challenged the Navy's mistake below, the Board refused to consider his right-to-compete challenge under § 3304(f)(1) on the merits. Appx5-7. Instead, the Board affirmed the administrative judge's finding (with modified reasoning) and held that Mr. Brimer's claim was barred as a matter of law by its earlier 2018 decision—*Oram v. Department of the Navy*, No. DC-3330-17-0755-I-1, 2022 WL 3971523 (MSPB Aug. 31, 2022)—which precludes any veteran employed in the federal service from invoking § 3304(f)(1)'s right to compete. *See* Appx5-7. *Oram* in turn relied on language from this Court's 2015 decision in *Kerner* finding that federally employed veterans "are already 'eligible to apply' to merit promotion vacancies[; therefore,] such applicants could not have been the intended

beneficiaries of section 3304(f).” *Oram*, 2022 WL 3971523, at *4 (quoting *Kerner v. Dep’t of the Interior*, 778 F.3d 1336, 1338 (Fed. Cir. 2015)).

The Board’s *Oram* decision expressed reservation with its own broad reading of *Kerner*. It noted, as it overruled nearly half a dozen of its own cases, that although “the Federal Circuit seems to have gone well beyond [*Kerner*’s] narrow question,” “the Federal Circuit’s broad statements in *Kerner* cannot be dismissed as mere dicta.” *Id.* at *4-5. But the Board should have understood that the *Kerner* court *did*, in fact, address only the question before it, and its misreading of the law in *Oram* has diminished the opportunity to compete guaranteed by the VEOA. And while *Kerner* includes several unclear statements regarding the legislative history and structure of § 3304(f)(1), these can be distinguished and clarified in light of the overall holding in *Kerner*.

What remains now for veterans is a confusing rewrite of 5 U.S.C. § 3304(f)(1) to a “first timers only” rule—one that contradicts the text, history, and legislative intent to also ensure that federally employed veterans are not improperly barred from competition. No facts preclude Petitioner from relying on the opportunity-to-compete provisions of the VEOA—only the Board’s erroneous interpretation of the statute.

## III. STATEMENT OF THE CASE

### A. The Statute at Issue

Congress passed the VEOA in the late 1990s in the face of a considerable decline in the number of veterans employed in the federal civil service. *See* S. Hrg. No. 105-949, at 13 (statement of Mary Lou Lindholm, Assoc. Dir. for Emp. Serv., U.S. Off. of Pers. Mgmt.). The government precipitated this decline as it committed to significant downsizing while World War II and Korean veterans retired from the civil service. *Id.*; *see also* S. Rep. No. 105-340, at 28 (1998).

The VEOA sought to prevent federal agencies from mistreating qualified veteran candidates and employees. In part, the VEOA was dedicated to protecting employed veterans from being singled out for removal and to improving the remedies available to veterans in the face of prohibited personnel practices. *See* S. Hrg. No. 105-949, at 1-10; 143 Cong. Rec. S7603-07 (daily ed. July 16, 1997).

Section 2 of the VEOA, titled "Access for Veterans," provides that "for all merit promotion announcements[,] . . . veterans . . . are eligible to apply." VEOA, 112 Stat. at 3182, § 2; 5 U.S.C. § 3304(f)(3)-(4). Although section 2 of the VEOA does not by itself grant veterans' preference rights such as ranking preferences or other tie-breakers, it guarantees preference-eligible veterans the right to *at least be considered* when applying for a merit promotion. 5 U.S.C. § 3304(f); *cf.* 5 U.S.C. § 3309; 5 U.S.C. § 3311. Subsection (f)(1) of 5 U.S.C. § 3304 specifies that:

> [p]reference eligibles or veterans who have been separated from the armed forces under honorable conditions after 3 years or more of active service may not be denied the opportunity to compete for vacant positions for which the agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures.

5 U.S.C. § 3304(f)(1) (1998) (enacted as part of section 2 of the VEOA).

### B. The Navy Erroneously Failed to Consider Mr. Brimer's Application for the Position of Assistant Human Resources Officer (GS-14)

Mr. Brimer is a preference-eligible veteran who honorably served as a uniformed serviceman for nine years and ten months. Appx14. He started working as a GS-13 Supervisory Human Relations Specialist at the Navy's Bureau of Medicine and Surgery on September 3, 2017. *See* Appx14. Three years later, on September 5, 2020, Mr. Brimer applied for a merit promotion to become a GS-14 Assistant Human Resources Officer with the Naval Education and Training Command. Appx14; Appx223; Appx36.

The position had been posted a day earlier on USAJobs under Job Announcement ST-10905451-20-DM, which indicated that the agency was accepting applications from outside its workforce. Appx2; Appx14. Mr. Brimer submitted the necessary materials, but the Navy failed to refer his application to the hiring official. Appx14; Appx223. The human resources manager who oversaw Mr. Brimer's application mistakenly believed that he had not submitted documents

reflecting that he met his time-in-grade ("TIG") requirement for the position even though he had submitted both his TIG forms and all other documents necessary for consideration. Appx2-3; Appx14-15.

On September 25, 2020, Mr. Brimer was notified by the agency that he was not selected for the position on the grounds that he had failed to submit a form confirming that he had met his TIG requirements. Appx223-224. Mr. Brimer responded by email the same day. He asked the Navy to correct the eligibility error and attached copies of the forms showing that he had met his TIG requirements as well as a screenshot from USAJobs showing that he had submitted the form as part of his application. Appx36; Appx135. The Navy failed to correct the error despite continued email requests attaching the appropriate forms. Appx36; Appx135. In response, Mr. Brimer filed a VEOA complaint on October 20, 2020, with the Department of Labor, Veterans' Employment and Training Service ("VETS"). Appx3. Two days after receiving Mr. Brimer's complaint, the Navy extended an offer for the position to another applicant on October 22, 2020. Appx192.

On November 18, 2020—a month after the position had already been filled—the Navy reviewed Mr. Brimer's application and conceded that it had mistakenly failed to consider Mr. Brimer's application. Appx2-3; Appx192; Appx224. The Navy nevertheless asserted that Mr. Brimer would not have been selected even if no eligibility error had been made. Appx18-19. Through discovery requests, however,

Mr. Brimer determined that the best qualified applicants referred to the hiring official were given numerical scores between 94 and 100; that the score given to Mr. Brimer during retroactive review was 96; and further, that being the most highly rated applicant was not a requirement to obtain the position. Appx193-195. Mr. Brimer also alleged that he satisfied the minimum qualifications for the position. Appx194-196. Because the Navy selected from the best qualified candidates referred for the position, Mr. Brimer could have been interviewed and even selected for the position but for the Navy's eligibility error. Appx224. Instead, Mr. Brimer was never referred, never interviewed, and never considered before the Navy filled the vacancy.

## C. Proceedings Before the Board

### 1. The Administrative Judge's Initial Decision Dismissed Mr. Brimer's Opportunity-to-Compete Claim

After exhausting his remedies before the Department of Labor, Mr. Brimer filed an appeal to the Board asserting that the Navy's failure to consider him for the GS-14 position (1) obstructed his "right to compete for employment" and (2) violated his veterans' preference rights. *See* Appx32-39. The administrative judge issued an initial decision on May 18, 2021, dismissing Mr. Brimer's opportunity-to-compete claim under 5 U.S.C. § 2302(b)(4) as well as his denial-of-veterans'-preference claim under 5 U.S.C. § 3330a(1)(A) for lack of jurisdiction. Appx13-27. In particular, the administrative judge denied Mr. Brimer's opportunity-

to-compete claim based on an acceptance of the agency's representation that Mr. Brimer would not have been selected for the vacancy even had the error not occurred. Appx18-19. Mr. Brimer timely filed a petition for review. Appx186-213.

#### 2. The Final Order Modified the Reasoning and Concluded that Mr. Brimer's § 3304 Claim Failed as a Matter of Law Under *Oram*

The Board issued a Final Order on November 30, 2023. Appx1-12. On review, the Board "disagree[d] with the administrative judge's reasoning for denying corrective action" but found that nevertheless the "agency must prevail as a matter of law." Appx4-7. In particular, the Board affirmed, with modified reasoning, the administrative judge's denial of Mr. Brimer's opportunity-to-compete claim. Appx5-7. The Board found that it was "undisputed" that Mr. Brimer's application "was not referred to the hiring official because the agency mistakenly believed that he did not submit documents reflecting that he met the time-in-grade requirement for the position." Appx2-3. Nevertheless, the Board held that Mr. Brimer and all other veterans employed in the federal service are barred as a matter of law from asserting opportunity-to-compete claims under 5 U.S.C. § 3304(f)(1). Appx5-7.

The Board cited its earlier precedential holding in *Oram*, 2022 WL 3971523, at *5, which relied on this Court's decision in *Kerner*, 778 F.3d 1336. It held that, "[i]n *Kerner*, . . . the Federal Circuit reasoned that nothing in the statutory language, the legislative history, or case law supported a presumption that the 'opportunity to

compete' provision in 5 U.S.C. § 3304(f) applies in instances in which an applicant is already employed in the Federal civil service." Appx6 (citing *Kerner*, 778 F.3d at 1338). "Here," the Board reasoned, "because it is undisputed that the appellant was already a Federal employee, 5 U.S.C. § 3304(f) was inapplicable to him regardless of whether the agency forwarded his application to the selecting official." Appx6. The Board did not reach the merits of Mr. Brimer's argument that his opportunity to compete had been obstructed by the Navy's error below. Appx6-7.

Mr. Brimer timely filed a petition for review to this Court on January 16, 2024.

## IV. SUMMARY OF ARGUMENT

The plain language of § 3304(f)(1) grants a statutory right to compete to veterans applying for civil federal employment without qualification as to that veteran's employment status. When considering the VEOA, Congress considered and rejected language for § 3304(f)(1) that would have limited it by civil employment status. As it drafted, discussed, and passed the VEOA in 1998, Congress was concerned that veterans were "the last hired and the first fired" in federal civil service. S. Hrg. No. 105-949, at 7 (statement of Rep. Mica). In response, Congress passed the VEOA to assist the "many highly qualified veterans . . . *already in the federal workforce* to apply for and to compete for federal jobs and positions." *Id.* at 71 (emphasis added) (statement of Sidney Daniels, Deputy Dir., Nat'l Legis. Serv., Veterans of Foreign Wars of the U.S.).

For nearly two decades, this Court and the Board afforded § 3304's opportunity to compete for federal employment to veterans both within and without the federal civil service. Under the framework established by both tribunals, veterans who applied for merit promotions were guaranteed the right not to be barred from competing for a vacancy. Then, in 2015, this Court decided *Kerner*, a case directed to whether an agency "violated [the veteran's] VEOA rights under § 3304(f) because it did not credit his non-federal civil service experience under § 3311 when determining whether he met the time-in-grade requirements." 778 F.3d at 1337-38. This Court held that preferential treatments such as those in § 3311 do not apply to merit promotions through § 3304(f)'s opportunity-to-compete provision. That is not disputed.

As part of its opinion, however, *Kerner* included a discussion of the legislative history of § 3304(f) and the VEOA. This discussion was interpreted by the Board in *Oram* (and again by the Board here) to further hold that the VEOA, on its own, can never apply to federally employed veterans applying for vacancies under merit promotion procedures. The Board erred in *Oram* by reading that language out of context with *Kerner*, which dealt solely with the question of whether *preference* rights are available to veterans applying for merit promotions. *Oram* should be overruled. To the extent *Kerner did* hold that the VEOA's right to compete does not

cover federally employed veterans, it was overbroad in doing so and must be clarified.

## V. STANDARD OF REVIEW

This Court reviews the record below and sets aside any agency action, findings, or conclusions found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *See Cheeseman v. Off. of Pers. Mgmt.*, 791 F.2d 138, 140 (Fed. Cir. 1986) (quoting 5 U.S.C. § 7703(c) (1982)); *Graybill v. U.S. Postal Serv.*, 782 F.2d 1567, 1570 (Fed. Cir. 1986). Of relevance to this case, this Court reviews statutory and regulatory interpretations by the Merit Systems Protection Board de novo. *Kievenaar v. Off. of Pers. Mgmt.*, 421 F.3d 1359, 1362 (Fed. Cir. 2005).

## VI. ARGUMENT

### A. Section 3304(f)(1)'s Right to Compete Covers Federally Employed Veterans Like Mr. Brimer

The VEOA ensures through 5 U.S.C. § 3304(f)(1) that veterans "may not be denied the opportunity to compete for vacant positions." Under its plain language, this protection applies to "veterans" irrespective of whether they are applying for their first federal position or a subsequent position. 5 U.S.C. § 3304(f)(1).

In interpreting the meaning of statutes, this Court "begin[s], of course, with the language of the statutes at issue. However, to fully understand the meaning of

the statute, [this Court] look[s] 'not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'" *Associated Elec. Coop., Inc. v. United States*, 226 F.3d 1322, 1326 (Fed. Cir. 2000) (citation omitted) (quoting *Crandon v. United States*, 494 U.S. 152, 158 (1990)). Here, the structure of the statute as a whole, the legislative history, and subsequent decisions from this Court all confirm that § 3304 applies to all veterans, including those who are already employed by the federal government.

#### 1. The Text of § 3304(f)(1) Covers Veterans Without Any Qualification on Employment Status

By its plain text, § 3304(f)(1) grants an actionable[1] right to compete to "veterans" who are applying to "vacant positions . . . under merit promotion procedures." 5 U.S.C. § 3304(f)(1). Section 3304(f)(1) on its face includes no qualification regarding the employment status of the veterans or whether this is the first or a subsequent position that the veteran is applying for. Rather, it states that "veterans . . . may not be denied the opportunity to compete for vacant positions." *Id*.

The other terms used in § 3304(f)(1) likewise do not qualify the protections based on the veteran's civil employment status. For example, "preference

[1] A violation of the opportunity to compete guaranteed by 5 U.S.C. § 3304(f) is redressable under the VEOA. *Walker v. Dep't of the Army*, No. AT-344305-0538-I-1, 2006 WL 3475476, at *4 (MSPB Nov. 27, 2006).

eligible[s]" are defined by 5 U.S.C.A. § 2108 to include veterans of various wartime and campaign periods, as well as disabled veterans and select family members of disabled and fallen veterans, 5 U.S.C.A. § 2108(1), (3). The term "veteran[s]" also does not require a particular employment status by special definition or otherwise. *See, e.g.*, 5 U.S.C.A. § 2108(1).

The only qualification made by § 3304(f)(1) to the class of eligible veterans is that a "veteran[]" must "have been separated from the armed forces under honorable conditions after 3 years or more of active service . . . ." 5 U.S.C. § 3304(f)(1). In adding this restriction, Congress defined the class of eligible veterans based only on two criteria: (a) honorability in discharge and (b) past years of active military service—not a veteran's present civil employment status. *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions . . . , additional exceptions are not to be implied . . . ."); *United States v. Brockamp*, 519 U.S. 347, 352 (1997) (finding the "explicit listing of exceptions" indicative of Congress's intent to preclude courts from "read[ing] other unmentioned, open-ended . . . exceptions into the statute").

If Congress had wanted to carve out *presently employed* preference eligibles and three-year veterans from § 3304(f)(1), it could have written in that limitation. It did not do so. This stands in contrast to provisions from other veterans' benefit statutes that do include such qualifications. For example, the Veterans' Preference

Act of 1944, Pub. L. No. 78-359, ch. 287, 58 Stat. 387 ("VPA"), was designed to help veterans obtain their first federal job through various application advantages, and it included express language to this effect, stating that "[a] preference eligible who receives a passing grade in an examination for *entrance* into the competitive service is entitled to additional points above his earned rating, as follows . . . ." *See, e.g.*, 5 U.S.C. § 3309 (emphasis added).

The plain language of § 3304(f)(1), however, provides that any covered individual—i.e., any preference eligible or individual whose military service and conditions of discharge bring him or her within the scope of the statute—may compete for a vacancy whenever the hiring agency will accept applications from outside its own workforce. That language controls. *Lynch v. Alworth–Stephens Co.*, 267 U.S. 364, 370 (1925) ("[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense . . . .") (internal quotation marks omitted).

#### 2. The Overall Structure of § 3304 and Related Provisions Also Confirm that It Covers Veterans Without Qualification on Their Employment Status

The structure of § 3304(f)(1) is consistent with its plain language of allowing all qualified veterans—those having served three years or more of active service—*access* to opportunities to compete for vacant positions. Indeed, section 2 of the VEOA, which amended § 3304(f), is entitled "Access for Veterans"—indicating

Congress's intent to guarantee veterans' access to "compete for vacant positions." 112 Stat. at 3182, § 2. The same intent is shown in the broad title of the VEOA: "Veterans Employment Opportunities Act of 1998."

The provisions of § 3304 show that when Congress desired to qualify or limit opportunities for competitive service based on civil employment status or history, it did so expressly, as exemplified in unrelated subsections of this statute. *See, e.g.*, 5 U.S.C. § 3304(g)(4) (defining the advancement eligibilities of "a former employee of the Department"); 5 U.S.C. § 3304(d) (referring to "experience of an individual in a position other than the competitive service, such as . . . in the legislative or judicial branch, or in any private or nonprofit enterprise"); 5 U.S.C.A. § 5596 (b)(1) (Granting backpay due to unjustified personnel action to "an employee of an agency") . Where Congress excludes language in one section of a statute, but includes it in another, it is presumed that Congress did so intentionally. *Russello v. United States*, 464 U.S. 16, 23 (1983). Therefore, courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993); *Brogan v. United States*, 522 U.S. 398, 403 (1998) ("[I]t is not, and cannot be, [the] practice [of the courts] to restrict the unqualified language of a statute . . . .").

Congress also provided a mechanism in § 3304(f)(4) to ensure that persons already employed in the civil service would receive notice that they "are eligible to

apply" for such positions. 5 U.S.C. § 3304(f)(4). Since the 1970s, agencies have been required by 5 U.S.C. § 3327 to publicly announce opportunities to participate in competitive examinations that are open to nonfederal employees. Section 3304(f)(4) expands on that requirement by instructing agencies to also announce merit promotion opportunities, using the same mechanisms listed in § 3327. The provision intentionally creates a new administrative hurdle for agencies that might want to prevent veterans from applying to merit promotion vacancies by obfuscating the vacancy or otherwise making it unclear who could apply. *See* S. Hrg. No. 105-949, at 7 (statement of Rep. Mica expressing concern that agencies cancel hiring announcements when veterans apply). Taken as a whole, § 3304(f)(1) and § 3304(f)(4) anticipate that federal employees from other agencies are among the likely applicants for merit promotions.

### 3. As Shown in the Legislative History, Congress Specifically Enacted the VEOA to Protect Both Employed and Non-Employed Veterans

In crafting the VEOA, Congress spoke of helping veterans in the civil service find new and better employment within the federal workforce. The VEOA was enacted in 1998 amidst an "era of Federal downsizing." S. Rep. No. 105-340, at 17. Congress was concerned that "the veterans' preference system [was] not working as originally intended." S. Hrg. No. 105-949, at 6, 4 (statements of Rep. Mica and Rep. Cleland). Congressman Mica, who chaired the House Subcommittee on Civil

Service and led the effort to have the VEOA passed, explained at the Senate Committee hearing on S. 1021 that, "[u]nfortunately, there is a very strong anti-veteran culture in the Federal bureaucracy," and "studies of our hiring practices in the Federal workplace underscore this problem." *Id.* at 6 (statement of Rep. Mica).

Congressman Mica's example of a veteran in need of the protections afforded by the VEOA was "a temporary employee of a Federal agency for 18 years." *Id.* at 7. Congressman Mica explained that "[t]ime after time this individual applied for vacant positions." *Id.* And "time after time the agency canceled the vacancy announcement rather than hire this particular individual," leaving him "without any job security at all." *Id.* Much like Mr. Brimer, Congressman Mica's veteran was a federal employee qualified for a better position, but veterans' laws failed to guarantee him a right to compete with other candidates. *Id.* Congress wanted all veterans—first-timers *and* those already in the federal civil service—to have access to vacant positions, improve their station, and enjoy job security. Senator Cleland noted that the bill has several simple parts, including "remov[ing] artificial barriers that bar qualified veterans from competing for Federal jobs." *Id.* at 4 (statement of Rep. Cleland); 144 Cong. Rec. H10189 (daily ed. Oct. 8, 1998) ("[gives veterans] equal access, a kind of a fair, level playing field and fairness in employment" (statement of Rep. Mica)).

Unlike the enacted version of § 3304(f)(1), earlier versions did contain language that limited the class of beneficiaries based on employment status. And Congress specifically removed that language before passing the VEOA. The House companion bill previously provided that

> [n]o preference eligible, and no individual (other than a preference eligible) who has been separated from the armed forces under honorable conditions after 3 or more years of active service, shall be denied the opportunity to compete for an announced vacant position within an agency, in the competitive service or the excepted service, **by reason of—**
> **[ ](A) not having acquired competitive status; or**
> **[ ](B) not being an employee of such agency.**

H.R. Rep. No. 105-40(I), at 2 (emphasis added). This earlier version contained employment-based qualifications to the opportunity-to-compete guarantee, *see id.*, but Congress dropped these qualifying provisions, ultimately opting for the broader language that "[p]reference eligibles or veterans who have been separated from the armed forces under honorable conditions after 3 years or more of active service may not be denied the opportunity to compete for vacant positions." 5 U.S.C. § 3304(f)(1). It would be problematic to read an employment provision into the statute where Congress expressly removed a different employment provision from the same statute. "When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*,

593 U.S. 374, 393 (2021) (quoting *Ross v. Blake*, 578 U.S. 632, 641-42 (2016)) ("Congress'[s] choice to *remove* the statute's reference to purpose thus cuts *against* reading the statute 'to capture that very concept.'" (citation omitted)).

Referring to section 2 of the VEOA, which included § 3304(f), the association for Veterans of Foreign Wars testified in front of the Senate Veteran's Affairs Committee that "[s]ection 2 . . . will greatly assist many highly qualified veterans . . . *already in the federal workforce* to apply for and to compete for federal jobs and positions." S. Hrg. No. 105-949, at 71 (emphasis added) (statement of Sidney Daniels, Deputy Dir., Nat'l Legis. Serv., Veterans of Foreign Wars of the U.S.). Even the Merit Systems Protection Board submitted to the Committee that "[a]dditional appeals would be expected from *current* Federal employees" as a result of the VEOA. *Id.* at 111 (emphasis added) (statement of Ben Erdreich, Chairman, Merit Systems Protection Board). Congress knew and intended that § 3304(f)(1) cover veterans who are currently civil employees.

### 4. Prior Precedents Agreed that § 3304(f)(1) Protects Federally Employed Veterans

#### a. The Board Interpreted § 3304(f)(1) to Protect Federally Employed Veterans

After Congress passed the VEOA, the Board interpreted § 3304(f) to guarantee all veterans, regardless of current employment status in the federal government, an opportunity to compete in merit promotions processes. *See, e.g.*,

*Jolley v. Dep't of Homeland Sec.*, No. AT-3443-06-0447-I-1, 2007 WL 809507, at *5 (MSPB Feb. 21, 2007) ("We hold . . . that section 3304(f)(1) covers *current* employees along with those seeking initial federal appointments." (emphasis added)); *Styslinger v. Dep't of Army*, No. DA-3443-06-0168 I1, 2007 WL 806924, at *12 (MSPB Feb. 22, 2007) ("[T]he agency could not rely on the appellant's status as a current federal employee to deny him the right to compete . . . ."); *Gingery v. Dep't of Veterans Affs.*, No. CH-3330-09-0712-I-1, 2010 WL 2505595, at *1 (MSPB June 16, 2010) ("[A]ll covered individuals, including current employees and those seeking initial federal appointments, must be permitted to compete when applications will be accepted from persons outside the hiring agency's work force."); *Shapley v. Dep't of Homeland Sec.*, No. AT-3443-07-0829-I-1, 2008 WL 4271114, at *2 (MSPB Sept. 17, 2008) (accord).

*Jolley* analyzed the text and legislative history of 5 U.S.C. § 3304(f)(1) in holding that William Jolley, an employee of a different federal agency than the one posting the relevant merit promotion, was owed an equal opportunity to compete. 2007 WL 809507, at *2-4. Mr. Jolley had applied to an agency that only accepted merit promotion applications from candidates with "competitive status," which Mr. Jolley had not achieved. *Id.* at *4-5. According to the Board, the agency had misinterpreted § 3304(f)(1) to ignore applications from federally employed veterans, likely by relying on an interpretation of the previous versions of § 3304 that had not

been enacted. *Id.* at *5-6. Because the plain language of § 3304(f)(1) requires that "current employees along with those seeking initial federal appointments" be permitted to compete, the Board ordered the agency to review Mr. Jolley's application "and, if he is found qualified, to reconstruct the selection process for that position." *Id.* at *5.

#### b. This Court Likewise Interpreted § 3304(f)(1) to Protect Federally Employed Veterans

In harmony with these Board decisions, the Federal Circuit has historically construed § 3304(f)(1) of the VEOA as being available to veterans currently employed in the federal civil service—provided they could prove they were denied their right to compete. In *Joseph v. FTC*, 505 F.3d 1380 (Fed. Cir. 2007), this Court considered whether a veteran employed by another federal agency was given a full opportunity to compete for a vacant position. *Id.* at 1383. Mr. Joseph was among the top four candidates interviewed, and even though he would have been ranked first under competitive procedures, the agency chose another interviewed candidate following merit promotion procedures. *Id.* at 1382.

In *Joseph*, this Court looked to the statutory framework for veterans' benefits. It noted that "[u]nlike the statutes governing open competition applicants, under which a veteran's numerical rating is increased . . . , Congress adopted a different approach in dealing with veterans and merit promotion." *Id.* at 1383. Under this different approach, Congress instead "*guaranteed* veterans" that they would have "a

right to apply and an opportunity to compete for such positions." *Id.* (emphasis added). Regardless of the factual differences between this case and *Joseph*, the same guarantees underlying § 3304(f)(1)—expressly recognized by this Court in *Joseph*—apply here too.

Notably, this Court did not hold that Mr. Joseph was unentitled to protection under § 3304(f)(1) as a matter of law simply because he was currently employed in the federal civil service. Rather, it found on the facts that Mr. Joseph—unlike Mr. Brimer—was granted an interview and "a full 'opportunity to compete' in the merit selection process," just as § 3304(f)(1) requires for *all* eligible veterans. *Id.* at 1383-84. "The fact that he was not selected does not mean that he did not have a full 'opportunity to compete'; it means only that, after such competition, he was not selected." *Id.* at 1384.

In the years since *Joseph*, this Court has continued to afford veterans in the federal civil service consideration on the merits of their § 3304(f)(1) claims. In *Lynch v. Department of Defense*, 347 F. App'x 583 (Fed. Cir. 2009), this Court relied on the assumption that the only application benefit given to a veteran employed by the same agency where he applied for a merit promotion was this underlying right to compete. *Id.* at 584-85. "Nothing in the law entitles a veteran who is employed by the agency to be given any additional benefit [beyond an opportunity to compete]." *Id.*; *see also* 5 U.S.C. § 3304(f)(1), (f)(3). Thus, this Court concluded that the

agency's failure to grant Lynch an application advantage guaranteed to preference eligibles facing competitive examination (called a passover procedure) was inapplicable to the question of whether he had an equal *opportunity to compete* for a merit promotion. And in *Lazaro v. Department of Veterans Affairs*, 666 F.3d 1316 (Fed. Cir. 2012), this Court reversed the Board's finding that it did not have jurisdiction to resolve an opportunity-to-compete challenge by a federally employed veteran. *See id.* at 1321.

In each of these cases, this Court could have dismissed the appellant's right-to-compete claims in a few sentences had it believed that § 3304 did not apply to veterans currently employed in the civil service. Instead, it analyzed, on the facts, whether each agency had given each veteran the same opportunity to compete as other applicants. And here, it is undisputed that Mr. Brimer did not receive an opportunity to compete; indeed, the Navy does not dispute that it denied him an interview that he was otherwise qualified for because of the Navy's own clerical mistake.

### B. *Oram* Was Wrong to Broadly Read *Kerner* to Foreclose 5 U.S.C. § 3304(f)(1) for Every Federally Employed Veteran

As explained in the previous Section, this Court has historically treated § 3304(f)(1)'s right to compete as available—as a matter of law—to veterans in the federal civil service. But in 2015, this Court issued *Kerner*, 778 F.3d at 1339, which

generated uncertainty about the scope of § 3304(f)(1)'s protections in this and other cases involving federally employed veterans.

This Court held in *Kerner* that an applicant's opportunity to compete for a merit promotion is not violated by the denial of an application *advantage*, specifically the advantage of having one's federal work experience credited under 5 U.S.C. § 3311. *See id.* Mr. Edward Kerner was a veteran and GS-05 employee at the Department of the Interior. *Id.* at 1337. When he applied for a higher position in the same Department under merit promotion procedures, he was denied because he had not met his time-in-grade requirements. *Id.* The question posed by *Kerner* was narrow: whether the Department of the Interior "violated [the veteran's] VEOA rights under § 3304(f) because it did not credit his non-federal civil service experience under § 3311 when determining whether he met the time-in-grade requirements." *Id.* at 1337-38.

Mr. Kerner lost because he had the VPA and the VEOA confused. In hiring, a federal agency can fill a vacant position using a "competitive" examination process or a "[m]erit promotion" process. *See* 5 C.F.R. §§ 330.101, 332.101, 335.103 (2007). The VPA grants rights to veterans undergoing competition examination procedures. To help place veterans among the top candidates for hiring consideration, the VPA grants preference eligibles additional points on their passing examination score. *See* 5 U.S.C. § 3309; 5 C.F.R. § 337.101(b). Beyond point preferences, the VPA

incorporates other tie-breaking advantages for veteran applicants. *See, e.g.*, 5 U.S.C. § 3311. By contrast, § 3304 of the VEOA grants rights to veterans undergoing merit promotion procedures. *See Lynch*, 347 F. App'x at 585; *Joseph*, 505 F.3d at 1382-83. Under § 3304(f), veterans gain no preference over regular civilian applicants where an agency chooses to fill a position using merit promotion procedures. As this Court explained in *Joseph*, an agency need not ultimately hire a veteran so long as his or her application was meaningfully considered. 505 F.3d at 1383-84.

*Kerner* ultimately held that "5 U.S.C. §§ 3304(f) and 3311 do not require a federal agency to consider non-federal civil service experience when determining whether a veteran employed in the federal civil service meets a time-in-grade requirement for purposes of a merit promotion." 778 F.3d at 1339. In doing so, however, this Court made several remarks about the legislative history of the VEOA, including by stating that it "confirms that Congress did not intend for § 3304 to apply when a veteran or other preference-eligible applicant is already employed in federal civil service." *Id.*

While this and other statements in *Kerner* regarding the legislative history of § 3304(f) may be unclear in isolation (*see infra* Section VI.C), Mr. Brimer respectfully submits that the ultimate holding of *Kerner* can be consistent with *Joseph*, *Lynch*, and *Lazaro*. The Board in this case and in *Oram* was thus premature

in finding that *Kerner*'s isolated statements about the legislative history of the VEOA were binding as to all federally employed veterans.

### 1. *Oram* Incorrectly Found that § 3304(f) Does Not Protect Veterans in the Civil Service

In this case, the Board held that—despite his circumstances—Mr. Brimer has no right to compete "as a matter of law" under § 3304(f)(1) because he "was a Federal employee at the time of nonselection." Appx5-7. To so hold, the Board relied on its earlier decision in *Oram*. *Id.* (citing *Oram*, 2022 WL 3971523, at *5).

As explained in Section VI.A, *supra*, there is no support for a categorical bar to § 3304(f)(1) based on a veteran's civil employment status. *Oram* disqualifies the veterans that Congress intended to protect under the VEOA. *Oram* should be overruled and the Board's decision against Mr. Brimer should be reversed.

*Oram* dealt with an opportunity-to-compete challenge under § 3304(f). Mr. Oram was a veteran who held a GS-12 IT Specialist position with the Department of the Navy. *See Oram*, 2022 WL 3971523, at *1. Mr. Oram applied to another GS-12 IT position with the Navy through a merit promotion procedure. *Id.* He was informed that he was not considered for the vacancy "because he had been employed in his current position for less than 90 days," and that agency rules prevented him from being transferred, promoted, or reassigned before that time elapsed. *Id.* Mr. Oram challenged that determination before the Board.

In the initial determination in *Oram*, the administrative judge concluded that Mr. Oram "could not prevail as a matter of law on his argument that he was denied the opportunity to compete" "pursuant to the Federal Circuit's decision in *Kerner*." *Id.* at *2, *4. In affirming that initial determination, the Board agreed with the administrative judge that "the Federal Circuit in *Kerner* appeared to have answered a broader question than was necessary to resolve the factual dispute before it," and that "the decision 'would appear to be a marked departure from the application of [the] rights' articulated in 5 U.S.C. §§ 3330a(a)(1)(B) and 3304(f)." *Id.* at *4 (alteration in original) (citation omitted).

Nevertheless, the Board went on to hold that "[a]lthough we share the concerns expressed by the administrative judge, we agree with his conclusion that the Federal Circuit's broad statements in *Kerner* cannot be dismissed as mere dicta and must have been intended as essential to the central holding of the case." *Id.* at *5. In so doing, the Board expressly overruled several of its own prior decisions that either concluded or assumed that federally employed veterans are entitled to corrective action pursuant to 5 U.S.C. § 3304(f)(1).[2] It also ignored this Court's decisions in *Joseph*, *Lynch*, *Lazaro*, and *Kerner*, when properly read and understood.

---

[2] These overruled decisions include *Jolley*, 2007 WL809507; *Styslinger*, 2007 WL 806924; *Gingery*, 2010 WL 2505595; and *Shapley*, 2008 WL 4271114.

### 2. *Oram* Misinterpreted *Kerner,* a Case About Preferential Treatment, as a Case About the Right to Compete

In *Oram*, the Board held that *Kerner* was a per se prohibition against any federally employed veteran ever benefitting from § 3304's right to compete regardless of whether § 3311's preference rights are also implicated. 2022 WL 3971523, at *5-6. The Board in *Oram* believed that this Court "addressed the broader question of whether Congress intended section 3304's opportunity-to-compete provision to apply to preference-eligible applicants who are already employed in the Federal civil service." *Id*. at *4. But *Oram* took *Kerner* too far. Its various statements about related statutory provisions and the legislative history of § 3304 were informed by the unique facts of the *Kerner* case, including the intersection of § 3304's right to compete and § 3311's preference rights.

Although the majority of *Kerner*'s opinion dealt with the intersection of these two statutes, *Oram* fixated on several excerpts of *Kerner*:

> In discussing the statutory language, the [*Kerner*] court stated that "[t]he text of the VEOA shows that it is intended to assist veterans in gaining access to [F]ederal civil service employment, not to give veterans preference in merit promotions." Continuing, the court also noted that "[t]he legislative history of the VEOA confirms that Congress did not intend for [section] 3304 to apply when a veteran or other preference-eligible applicant is already employed in [F]ederal civil service." Finally, the court concluded its analysis of the legislative history of VEOA by observing that "statements [in VEOA's legislative history] show that the VEOA was specifically targeted to veterans not already employed in the [F]ederal civil service."

*Id.* at *5 (first alteration added; other alterations in original) (quoting *Kerner*, 778 F.3d at 1338, 1339).

For the reasons explained in the previous section, Congress intended for § 3304 to cover federally employed veterans. *See supra* Section VI.A.2. To the extent *Kerner*'s language about § 3304 and the VEOA can be interpreted otherwise, it should be clarified. *See infra* Section VI.C. But *Oram* went one step too far by finding that this language was necessary to *Kerner*'s holding and thus binding law on the Board. *Oram*, 2022 WL 3971523, at *5-6. It was not.

Section 3311, unlike § 3304, was enacted as part of the VPA in 1944. VPA, 58 Stat. at 390. And unlike the VEOA, the VPA has long been interpreted as not providing its protections to veterans applying for merit promotions. *See, e.g.*, *Brown v. Dep't of Veterans Affs.*, 247 F.3d 1222, 1224 (Fed. Cir. 2001). The rights afforded by the two acts are different. Those granted by the VPA often relate to preferential point *advantages* or the unique ability for veterans to supplement time-in-grade requirements (as for § 3311) rather than the VEOA's fundamental right to compete on even ground *at all*. By crediting the VPA's long history, this Court in *Kerner* recognized only that veterans cannot use § 3304(f)'s broader protection as an end-run around § 3311's built-in limitations. *See Kerner*, 778 F.3d at 1337-38 (gathering cases limiting the scope of the VPA).

In conducting its analysis, *Kerner* looked at the text and history of the VEOA to determine whether *preferential treatment*—not the fundamental *right to compete*—can flow from sections such as § 3311 through § 3304 to federally employed veterans. This Court examined the text of the title of both the VEOA and the particular section that amended § 3304(f), and found that both "show[ed] that the VEOA is intended to help veterans gain access to federal employment, not *preferential treatment in promotion decisions*." *Id.* at 1338 (emphasis added). This Court also reviewed the legislative history of the VEOA and found that "[t]here was no mention of *promotion preference* for veterans already employed in the competitive service." *Id.* at 1339 (emphasis added).

Thus, the core holding of *Kerner*—focusing on the interplay between the VPA and VEOA not providing a "promotion preference"—does not depart from longstanding Federal Circuit precedent; it follows the cases holding that a federal agency does not need to consider nonfederal civil service experience when determining whether a veteran employed in the federal civil service meets a time-in-grade requirement for the purposes of a merit promotion. *Id. Oram* misunderstood *Kerner*'s holding as a broad limitation on the scope of § 3304(f)(1) in *all* contexts, including cases like Mr. Brimer's where he merely seeks the baseline protections of § 3304(f)(1). As a result, *Oram* erroneously set aside a decade of precedent on § 3304.

### 3. *Kerner* Could Not Have Overturned This Court's Previous Decisions Assuming § 3304(f)(1) Covers Federally Employed Veterans

*Kerner* is neither the first nor the only decision by this Court to consider whether a federally employed veteran has had his or her right to compete violated. *Oram* was bound by cases like *Joseph* and *Lazaro*, which were (1) precedential, (2) earlier in time than *Kerner*, and (3) controlling over *Kerner* to the extent there is any conflict. *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Where there is direct conflict, the precedential decision is the first."). Yet the *Oram* Board focused exclusively on one paragraph in *Kerner* and never cited or considered any of this Court's earlier precedent. *Kerner* could not have held what *Oram* suggests.

*Joseph*, for example, analyzed the question of whether a federally employed veteran enjoys a protected right to compete under § 3304(f). *See supra* Section VI.A.4. *Joseph* and related cases correctly treated § 3304(f) as available and proceeded to review the facts as to whether the veteran's right to compete had been violated. The *Oram* Board was bound to follow that same framework of *Joseph*.[3] But under *Oram*'s interpretation of *Kerner*, earlier panels could never have even *reached* the facts of whether their respective veterans had their right to compete

[3] While *Lynch* is not precedential like *Joseph* or *Lazaro*, it follows the same framework. *See* 347 F. App'x at 584-85.

violated because none of their federally employed veterans would have had such a legal right in the first place.

Unlike Mr. Joseph, Mr. Brimer was never interviewed. Mr. Brimer deserves the same consideration of whether his opportunity to compete was violated. Under this Court's earlier precedents, it would have been afforded to him.

### C. To the Extent *Kerner* Actually Held that § 3304(f)(1) Never Applies to Federally Employed Veterans, It Must Be Clarified or Overruled

*Kerner*'s ultimate holding did not depart from or modify *Joseph* or *Lazaro* when it found only that "5 U.S.C. §§ 3304(f) and 3311 do not require a federal agency to consider non-federal civil service experience . . . for purposes of a merit promotion." *Kerner*, 778 F.3d at 1339. But certain portions of *Kerner*'s discussion of the VEOA's legislative history have created confusion at the Board. *See supra* Section VI.B.2. In particular, *Kerner* included a seemingly unqualified remark that § 3304 was limited to veterans outside the federal civil service:

> The legislative history of the VEOA confirms that Congress did not intend for § 3304 to apply when a veteran or other preference-eligible applicant is already employed in federal civil service. . . . Indeed, statements show that the VEOA was specifically targeted to veterans not already employed in the federal civil service.

*Kerner*, 778 F.3d at 1339. As noted above, the context of the rest of the decision makes clear that *Kerner* was analyzing § 3304 in the context of § 3311, and not

alone. But *Oram* relied heavily on this remark in overruling its precedent, *see supra* Section VI.B.2, and the remark warrants clarification.

Unlike prior claimants such as Mr. Kerner, Mr. Brimer is not relying on any portion of the VPA (or the interplay between the VPA and VEOA) in his appeal. His case is based solely on his right to compete under 5 U.S.C. § 3304(f)(1). This case thus allows the Court to analyze § 3304(f)(1) alone and sharpen the contours of *Kerner*.

#### 1. ***Kerner* Does Not Analyze the Plain Language of § 3304(f)(1)**

Though it discussed the legislative history of the VEOA, *Kerner* could not have made a sweeping statutory construction of § 3304 because it never performed the necessary steps to do so. Most importantly, *Kerner* never analyzed the text of § 3304(f)(1), the statutory provision at issue in this case. The plain and unambiguous language of the statute is the core canon of statutory construction. *See United States v. Turkette*, 452 U.S. 576, 580 (1981). And as noted in Section VI.A.1, *supra*, the plain language of § 3304(f)(1) applies to *all* preference eligibles and veterans who have been separated after three or more years. It does not prescribe any other restrictions.

*Kerner* does include some language addressing other provisions of § 3304 and its legislative history. But this was all done in the context of the question presented in *Kerner*, not as a baseline statutory construction of § 3304(f)(1). Moreover,

without addressing the plain language of § 3304 and concluding that the text of § 3304(f)(1) was *at least* ambiguous, Kerner could not have relied on the legislative history of the VEOA to construe it. *United States v. Mo. Pac. R. Co.*, 278 U.S. 269, 277 (1929) ("It is elementary that, where no ambiguity exists, there is no room for construction.").

### 2. The Portions of the VEOA Cited in *Kerner* Make No Qualifications Regarding Employment Status

While *Kerner* never analyzes the plain language of § 3304(f)(1), *Kerner*'s discussion of other text in the VEOA may cause confusion—as it did in *Oram*—where it suggests that all VEOA provisions are limited by federal employment status. As one example, *Kerner* states that

> [t]he VEOA's title itself—"Veterans Employment Opportunity [sic] Act"—shows that its purpose is to help veterans get the opportunity for federal employment. *See* Pub. L. No. 105–339, 112 Stat 3182. And § 2 of the VEOA, which amended § 3304(f), is titled "Access for Veterans," showing that the VEOA is intended to help veterans gain access to federal employment, not preferential treatment in promotion decisions.

778 F.3d at 1338.

As noted in Section VI.A.2, *supra*, the title of the VEOA and section 2 demonstrate Congress's intent to provide *all* veterans—those within the civil service and without—"[o]pportunities" for employment and "[a]ccess" to vacant positions. The VEOA is not entitled the "Veterans [First] Employment Opportunit[y] Act." Nor is there any reason to infer that "Access for Veterans" should be read as "Access

for [Noncivil Service] Veterans." The plain language of both titles is unqualified. Indeed, this case is a powerful example of how a *veteran*, Mr. Brimer, can be denied *access* to an employment *opportunity* without the protection of § 3304(f). Thus, the words "[o]pportunities" and "[a]ccess" are just as relevant for civil servants like Mr. Brimer as they are for noncivil service employees.

In any event, section headings cannot limit the plain language of the statute. "[T]he title of a statute is of use only when it sheds light on some ambiguous word or phrase in the statute itself." *Carter v. United States*, 530 U.S. 255, 267 (2000) (cleaned up) (citation omitted); *see also Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018). No portion of § 3304(f)(1) was identified as ambiguous in *Kerner*.

*Kerner*'s discussion of the scope of § 3304 also references another provision in the statute, § 3304(f)(4):

> [Section] 3304(f)(4) states that merit-promotion vacancies accepting applications from outside the agency's workforce must announce that preference-eligible veterans are "eligible to apply." This language shows that Congress intended the VEOA to assist veterans otherwise ineligible to apply. Veterans already employed by the competitive service are already "eligible to apply" to merit-promotion vacancies, and thus cannot be the intended target for § 3304(f).

*Kerner*, 778 F.3d at 1338. This conclusion about § 3304(f)(4), in isolation, is incorrect. As explained above in Section VI.A.2, § 3304(f)(4) is a posting requirement directed to an agency, not a grant of eligibility. Congress provided

§ 3304(f)(4) as a posting rule to ensure that persons already employed in the civil service would receive notice that they "are eligible to apply" for such positions. 5 U.S.C. § 3304(f)(4).

Agencies are required by 5 U.S.C. § 3327 to publicly announce opportunities to participate in competitive examinations that are open to nonfederal employees. Section 3327 applies where an agency is willing to consider applicants from *outside* the federal workforce. *See* 5 U.S.C. § 3327(b)(1). But § 3304(f)(4) applies where an agency is willing to consider from *inside* the federal workforce. 5 U.S.C. § 3304(f)(4) ("The area of consideration for all merit promotion announcements *which include consideration of individuals of the Federal workforce* shall indicate that . . . veterans . . . are eligible to apply." (emphasis added)). Through § 3304(f)(1), veterans are eligible to compete for merit promotions only when the hiring agency is willing to consider applicants from outside its own workforce, including from inside other federal agencies. Taken as a whole, § 3304(f)(1) and § 3304(f)(4) anticipate that federal employees from other agencies are among the desired applicants for merit promotions or at least among the likely applicants. If veterans at other agencies are meant to receive notice of their opportunity to compete through § 3304(f)(4), it would make sense that they have the same opportunity to compete as others who have received the notice, including candidates from outside the federal government.

### 3. The VEOA Covers Non-Employed Veterans, but That Does Not Make It Exclusive to Those Veterans

*Kerner*'s discussion of the legislative history of the VEOA may also benefit from clarification. *Kerner* solely focuses on statements about the benefits to first-time applicants, but these statements do not suggest that other veterans are excluded. The legislative history shows that Congress wanted to benefit both first-time applications *and* existing civil servants.

*Kerner*'s discussion of the VEOA's legislative history suggests that Congress intended for first-time applicants to the government to be able to make § 3304(f)(1) claims.

> [S]tatements show that the VEOA was specifically targeted to veterans not already employed in the federal civil service. *E.g.*, . . . 144 CONG. REC. 24,806 (1998) (statement of Rep. Mica) ("Very often, . . . Federal agencies will only allow current civilian employees to apply for vacancies. *Veterans who do not work for the Federal Government are barred from even competing on their merits for these jobs. That will change when this legislation is enacted.* Under this bill[,] whenever an agency opens the competition to civilian employees outside of its own workforce, it must also allow these qualified veterans to compete.").

*Kerner*, 778 F.3d at 1339 (citation omitted). *Kerner* is correct that Congress wanted the VEOA to help first-time applicants to the federal government. In addition to guaranteeing an opportunity to compete for merit promotions, the statute (1) made a violation of veteran's preference laws a prohibited personnel practice, VEOA, 112 Stat. at 3189-90, § 6 and 5 U.S.C.A. § 2302; (2) extended veterans' preference

to jobs in the legislative and judicial branches, VEOA, 112 Stat. at 3187, § 4 and (3) created a redress system for the same, VEOA, 112 Stat. at 3185-87, § 3 and 5 U.S.C.A. § 3330a. But Congress's desire to help a first-timer veteran get his or her first federal job does not support the inference that Congress intended that *all other* veterans be excluded.

The legislative history that *Kerner* points to as support for its holding also does not exclude veterans in the civil service, and "[s]electively enforcing a statute's plain terms is not something courts generally do." *United States v. Hernandez*, 655 F.3d 1193, 1197 (10th Cir. 2011). In fact, *Kerner* cites Senator Charles Hagel as stating that the purpose of the VEOA was to help veterans "*get and hold* jobs with the Federal Government." 778 F.3d at 1339 (quoting 143 Cong. Rec. 14,682 (1997) (statement of Sen. Hagel)). A concern with veterans "hold[ing]," i.e., *retaining* federal employment rebuts the presumption that VEOA was only "intended to assist veterans in gaining access to federal civil service employment." *Id.* at 1338.

And as explained in Section VI.A.2, *supra*, Congress also spoke repeatedly about the need to prevent veterans from facing discrimination *while already* employed at federal agencies. *Kerner* did not grapple with these statements. Even setting aside the many statements by Congress that the VEOA was designed to help veterans currently in the civil service, excerpts from the legislative history discussed in *Kerner* would still not justify selective enforcement. A "general and somewhat

vague statement" by Congress does not "displace a specific textual provision that is clear and unambiguous." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002). Furthermore, legislative history that suggests an intent to benefit one group of veterans should not be read as an intent to exclude others. *See, e.g.*, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 713-16 (1979) (finding an implied remedy available where the legislative history contained a statement by a senator expressing dismay that the statute did not incorporate the remedy).

#### 4. For Purposes of Resolving the Case at Hand, If Overruling *Oram* Is Insufficient to Clarify *Kerner*, then *Kerner* Must Also Be Overruled

While certain aspects of *Kerner* may benefit from clarification, en banc consideration should not be necessary to cure these issues. To prevent further confusion, the Court could clarify *Kerner*'s holding simply by overturning *Oram*. In doing so, the Court can explain that *Kerner* was never intended to narrow the plain coverage of § 3304(f).

But to the extent *Kerner* did hold—without qualification or context—that § 3304 does not apply when a veteran or other preference-eligible applicant is already employed in federal civil service, it was wrongly decided for the reasons explained above and must be overruled. Veterans like Mr. Brimer have earned the equal "opportunity to compete for vacant positions" for merit promotions guaranteed

to them under § 3304(f)(1). This case allows the Court to clarify and reaffirm that protection.

## VII. CONCLUSION

For these reasons, this Court should reverse the decision below, find that the right to compete in 5 U.S.C. § 3304(f)(1) is not limited to veterans outside the federal service, and remand for further proceedings to determine if the facts in Mr. Brimer's case warrant finding a violation of that statutory right.

Respectfully submitted,

May 6, 2024

*/s/Daniel C. Cooley*
Daniel C. Cooley
J. Derek McCorquindale
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
Telephone: (571) 203-2700

Jason L. Romrell
Alexander E. Harding
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000

*Attorneys for Petitioner David S. Brimer*

# Addendum

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DAVID SCOTT BRIMER, Appellant, | DOCKET NUMBER AT-3330-21-0119-I-1 |
| v. | |
| DEPARTMENT OF THE NAVY, Agency. | DATE: November 30, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David Scott Brimer, Milton, Florida, pro se.

Carol M. Lynch and Daniel J. Watson, Esquire, Pensacola, Florida, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which denied corrective action in the appellant's appeal under the Veterans Employment Opportunities Act of 1998 (VEOA). Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find jurisdiction over the appellant's right-to-compete claim pursuant to 5 U.S.C. § 3330a(a)(1)(A)-(B) and to clarify the reason as to why the appellant is not entitled to corrective action under VEOA, we AFFIRM the initial decision.

## BACKGROUND

¶2 This appeal concerns the appellant's nonselection for a merit promotion to a GS-14 Assistant Human Resources Officer position with the agency's Naval Education and Training Command. The following facts are undisputed. The appellant is a preference-eligible disabled veteran. Initial Appeal File (IAF), Tab 7 at 6, Tab 10 at 7, 10. At the time of his application for promotion, the appellant was employed by the agency's Bureau of Medicine and Surgery as a GS-13 Supervisory Human Resources Specialist. IAF, Tab 7 at 4. The vacancy announcement, advertised under Job Announcement ST-10905451-20-DM, was a merit promotion announcement open to current or former Federal employees, and the agency accepted applications from outside its workforce, including VEOA eligibles, and Military Spouse Preference (MSP) eligibles. IAF, Tab 6 at 9-10.

¶3 The appellant applied for the position; however, his application was not referred to the hiring official because the agency mistakenly believed that he did

not submit documents reflecting that he met the time-in-grade requirement for the position. *Id.* at 5, 38. The appellant filed a VEOA complaint with the Department of Labor (DOL), Veterans' Employment and Training Service (VETS), on October 20, 2020. IAF, Tab 10 at 12. After receiving notification of the appellant's complaint, the agency reviewed the appellant's application and informed VETS that the appellant was not among the most highly qualified candidates for the position. IAF, Tab 6 at 24. On December 2, 2020, VETS issued a letter closing the file on the appellant's VEOA complaint and notified him of his appeal rights. IAF, Tab 1 at 7-8.

¶4 The appellant timely filed a Board appeal and requested a hearing. IAF, Tab 1 at 2. In his appeal, he alleged that the agency obstructed his right to compete for employment and violated his veterans' preference rights. *Id.* at 5. The administrative judge issued a jurisdictional order, which notified the appellant that the Board may not have jurisdiction over his appeal, explained the jurisdictional requirements under VEOA, and ordered the appellant to file evidence and argument establishing Board jurisdiction. IAF, Tab 9. Both parties filed responses. IAF, Tabs 10-11. The administrative judge issued a decision on the merits, without holding a hearing, denying the appellant's request for corrective action under VEOA and finding the Board otherwise lacks jurisdiction over the appellant's allegation of a prohibited personnel practice pursuant to 5 U.S.C. § 2302(b)(4). IAF, Tab 12, Initial Decision (ID) at 5-7.

¶5 The appellant has filed a petition for review, wherein he asserts that the administrative judge erred by adjudicating the VEOA claim on the merits after only requesting that the appellant submit evidence and argument as to jurisdiction over his claim. Petition for Review (PFR) File, Tab 1 at 5-8. He also submits additional argument regarding the merits of the nonselection. *Id.* at 8-15. The agency has filed a response. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over the appellant's right-to-compete claim.

¶6 Under VEOA, preference eligibles and certain veterans who unsuccessfully apply for a position being filled by a Federal agency for which the agency accepted applications from individuals outside of its own workforce under merit promotion procedures and who allege that they have been denied the opportunity to compete afforded to them under 5 U.S.C. § 3304(f)(1) may seek administrative redress for a violation of their rights. 5 U.S.C. § 3330a(a)(1)(A)-(B); *Walker v. Department of the Army*, 104 M.S.P.R. 96, ¶¶ 9-17 (2006). These are commonly referred to as right-to-compete claims. Prior to the passage of the Veterans Benefits Improvement Act of 2004, Pub. L. No. 108-454, § 804, 118 Stat. 3598, 3626 (2004), preference-eligible applicants were permitted to file a right-to-compete claim pursuant to statutory provisions now codified at 5 U.S.C. § 3330a(a)(1)(A). *Walker*, 104 M.S.P.R. 96, ¶¶ 16-17 (explaining that 5 U.S.C. § 3304(f)(1) is a statute relating to veterans' preference for purposes of 5 U.S.C. § 3330a(a)(1)). The Veterans Benefits Improvement Act of 2004 extended that right to include covered veterans, who may file a claim pursuant to 5 U.S.C. § 3330a(a)(1)(B). *Montgomery v. Department of Health and Human Services*, 123 M.S.P.R. 216, ¶ 4 n.1 (2016).

¶7 To establish Board jurisdiction over a claim that he was denied the opportunity to compete for a vacant position under 5 U.S.C. § 3330a(a)(1)(A)-(B), an appellant must demonstrate that he exhausted his administrative remedy with DOL and make nonfrivolous allegations of the following: that he is a preference eligible or veteran who was separated from the armed forces under honorable conditions after 3 years or more of active service; that the actions at issue took place on or after the October 31, 1998 enactment date of VEOA for preference eligibles or the December 10, 2004 enactment date of the Veterans Benefits Improvement Act of 2004 for veterans covered by 5 U.S.C. § 3304(f)(1); and that the agency denied him the opportunity to compete under merit promotion

procedures for a vacant position for which the agency accepted applications from individuals outside its own workforce. *See Montgomery*, 123 M.S.P.R. 216, ¶¶ 4-5; *Becker v. Department of Veterans Affairs*, 115 M.S.P.R. 409, ¶ 5 (2010). The administrative judge found that the appellant did not establish jurisdiction over his claim pursuant to 5 U.S.C. § 3330a(a)(1)(A). ID at 5-6. He implicitly found that the appellant established jurisdiction over his claim pursuant to 5 U.S.C. § 3330a(a)(1)(B). ID at 6-7.

¶8 The appellant has made a nonfrivolous allegation that he is both preference eligible and a veteran who was separated from the armed forces under honorable conditions after 3 years of active service. IAF, Tab 10 at 4, 7-10. He has also presented evidence that he has exhausted his remedy before DOL. IAF, Tab 1 at 7-8. It is undisputed that the agency filled a vacant position using merit promotion procedures, accepted applicants from outside its workforce, and that the selection at issue took place in 2020, after the enactment of VEOA and the Veterans Benefits Improvement Act of 2004. IAF, Tab 6 at 9-17. Accordingly, we find that the Board has jurisdiction over the appellant's right-to-compete claim under 5 U.S.C. § 3330a(a)(1)(A) and (a)(1)(B). *See Montgomery*, 123 M.S.P.R. 216, ¶¶ 4-5 & nn.1-2.

<u>We agree with the administrative judge's conclusion that the appellant was not entitled to any corrective action under VEOA; however, we modify the initial decision as to the legal basis for this determination.</u>

¶9 When, as here, the agency posts a merit-promotion vacancy and opens the application process to individuals outside of its workforce, preference-eligible applicants and certain veterans "may not be denied the opportunity to compete" for such vacancies. *Kerner v. Department of the Interior*, 778 F.3d 1336, 1337 (Fed. Cir. 2015) (quoting 5 U.S.C. § 3304(f)(1)). The administrative judge concluded that the agency did not violate the appellant's right to compete because "the undisputed record supports a finding that the appellant was ultimately granted the right to compete for this vacancy after initial missteps in handling his

application." ID at 6. Although we disagree with the administrative judge's reasoning for denying corrective action, for the following reasons, we find that the agency must prevail as a matter of law.

¶10 In *Oram v. Department of the Navy*, 2022 MSPB 30, ¶ 17, the Board found that, as a matter of law, current Federal employees are not entitled to corrective action based on a claim of denial of an opportunity to compete under 5 U.S.C. § 3304(f)(1). In reaching this decision, the Board relied on the U.S. Court of Appeals for the Federal Circuit's decision in *Kerner*, 778 F.3d 1336. In *Kerner*, after reviewing the text and legislative history of VEOA and its precursor, the Veterans' Preference Act, the Federal Circuit reasoned that nothing in the statutory language, the legislative history, or case law supported a presumption that the "opportunity to compete" provision in 5 U.S.C. § 3304(f) applies in instances in which an applicant is already employed in the Federal civil service. *Kerner*, 778 F.3d at 1338. The Federal Circuit reasoned that the intent of the subject provision was to assist veterans in obtaining an initial appointment to the Federal service, not subsequent promotions or other intra-agency movement. *Id.* The court concluded that, because veterans currently employed in a competitive service position are already "eligible to apply" to merit promotion vacancies, such applicants could not have been the intended beneficiaries of section 3304(f). *Id.* at 1338-39. Here, because it is undisputed that the appellant was already a Federal employee, 5 U.S.C. § 3304(f) was inapplicable to him regardless of whether the agency forwarded his application to the selecting official. *See Oram*, 2022 MSPB 30, ¶¶ 13, 17 (citing *Kerner*, 778 F.3d at 1338-39). For these reasons, we need not reach the appellant's arguments on review regarding the agency's belated review of his application, and we affirm the denial of corrective action on the merits.

¶11 The appellant has argued on review that he was prejudiced by the administrative judge's decision on the merits after only being instructed to submit evidence and argument as to jurisdiction over his claim. PFR File, Tab 1 at 6-8.

VEOA complainants do not have an unconditional right to a hearing and the Board may decide a VEOA appeal on the merits, without holding a hearing, when there are no genuine disputes of material fact and one party must prevail as a matter of law. *Davis v. Department of Defense*, 105 M.S.P.R. 604, ¶ 12 (2007). Thus, any error was not prejudicial because there is no dispute that the appellant was a Federal employee at the time of the nonselection, and, therefore, the agency must prevail as a matter of law.

¶12 Based on the foregoing, we affirm as modified the initial decision, still denying the appellant's request for corrective action under VEOA. We also affirm the administrative judge's finding that the Board otherwise lacks jurisdiction over the appellant's prohibited personnel practices claim pursuant to 5 U.S.C. § 2302(b)(4).

## NOTICE OF APPEAL RIGHTS[2]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

[2] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3)** **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[3] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

[3] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Jennifer Everling

FOR THE BOARD: ______________________________
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Service — David Brimer
Served on email address registered with MSPB

Agency Representative

Electronic Service — Carol Lynch
Served on email address registered with MSPB

Agency Representative

Electronic Service — Daniel Watson
Served on email address registered with MSPB

11/30/2023
(Date)

Dinh Chung

Dinh Chung
Case Management Specialist

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**ATLANTA REGIONAL OFFICE**

DAVID SCOTT BRIMER,
Appellant,

v.

DEPARTMENT OF THE NAVY,
Agency.

DOCKET NUMBER
AT-3330-21-0119-I-1

DATE: May 18, 2021

David Scott Brimer, Milton, Florida, pro se.

Carol M. Lynch, Pensacola, Florida, for the agency.

Daniel J. Watson, Pensacola, Florida, for the agency.

**BEFORE**
Brian Bohlen
Administrative Judge

**INITIAL DECISION**

On December 2, 2020, the appellant, David Brimer, timely filed the above-captioned appeal asserting that the Department of the Navy (hereafter "the agency") committed a prohibited personnel practice (PPP) under 5 U.S.C. § 2302(b)(4), and violated his veterans' preference rights and right to compete for a vacant GS-0201-14 Assistant Human Resources Officer position at the Naval Education and Training Command (NETC) in violation of the Veterans Employment Opportunities Act of 1998 (VEOA). Because no material facts are in genuine dispute, the hearing the appellant requested was not held, and this appeal is being decided based on the written submissions of the parties. See *Burroughs*

*v. Department of the Army*, 115 M.S.P.R. 656, ¶8 (2011). For the reasons explained below, the appellant's request for corrective action is denied.

Undisputed Material Facts Bearing on this Decision

As noted above, this appeal concerns the appellant's unsuccessful application for a GS-0201-14 promotion at NETC. The position vacancy was open between September 4, 2020, and September 11, 2020, under Job Announcement ST-10905451-20-DM. *See* Initial Appeal File (IAF), Tab 6, p. 9. At the time the appellant applied for the position, he was serving within a GS-0201-13 Supervisory Human Relations Specialist position with the Navy Bureau of Medicine and Surgery (BUMED), at the Pensacola Naval Air Station, Florida, and had been in that position since September 3, 2017. *See* IAF, Tab 7, p. 8. Much earlier in his career, the appellant honorably served as an enlisted Military Police uniformed soldier for nine years and seven months, between July 1983, and July, 1991. *See* IAF, Tab 10, p. 7 (Appellant's DD 214 Certificate of Release or Discharge from Active Duty). The Department of Veterans Affairs found on November 19, 2019 that the appellant had a 50% service-connect disability. *See* IAF, Tab 10, p. 10.

The Supervisory Human Resource Manager who oversaw the agency's recruitment for the GS-14 position, at issue was named Ms. Deborah Manton. Ms. Manton was tasked with initially reviewing the applications for the vacancy at issue to determine which among them met basic administrative requirements, including a requirement that applicants demonstrate at least one year of qualifying Time in Grade (TIG) experience at the GS-13 level within their applications. While the appellant provided evidence in his application package that he satisfied this TIG requirement, Ms. Manton found that he did not satisfy the TIG requirement and thus did not refer his application to the selecting official. *See* IAF, Tab 6, p. 38.

The appellant shortly thereafter filed a VEOA veterans' preference claim with the Department of Labor, Veterans' Employment & Training Service (VETS) concerning his non-selection. VETs assigned an investigator to the claim, who reached out to the Department of the Navy on October 23, 2020. *See* IAF, Tab 6, p. 30. The VETS investigator specifically communicated the following to the Navy:

> Mr. David Brimer alleges he applied for Vacancy Announcement ST-10905451-20-DM, Assistant Human Resources Officer, GS-14 with the agency. According to Complainant, he made a timely application for the subject position, but was found qualified and not referred for an interview. He submitted all required documents but was told his application was missing his SF 50. Complainant believes that he is very well qualified for the subject position and, as a ten-point preference eligible, questions whether he received his veterans' preference entitlement.
>
> Please review Mr. Brimer's application history for Vacancy Announcement ST-10905451- 20-DM with the agency and provide this office with a written statement of the agency position regarding Mr. Brimer's application, veterans' preference and the selection process. Please include a copy of the employment certificate(s) used to fill Vacancy Announcement ST-10905451-20-DM and any related documentation.

IAF, Tab 6, p. 30.

The above VETS request for information ultimately reached Supervisory Staffing Specialist Manton who responded by email to the VETS investigator:

> My sincere apologies for the delay in getting a response to you.
> Mr. Brimer applied to announcement ST-10905451-20-DM. He received the attached notification of results via email stating that "You were not considered at this time, because you were not among the most highly qualified candidates for this position. Your application could be considered at a future date"
>
> His resume does not reflect that he has experience focusing on the total life cycle view of human resources management, including hiring, firing, training, developing, and retiring in human resources planning and advising. Has demonstrable fundamental knowledge of

human resources management and systems, including all functional groups of human resources practices.

Research, interpret, and apply human resources management techniques and concepts in all areas of human resources.

Formulate and implement policy and processes for multiple functions of human resources (e.g., staffing and recruitment, position classification, compensation, labor relations, employee relations, employee benefits, oversight of automated personnel information systems, or employee development).

Oversee succession and workforce development initiatives so they reflect the diversity of the local workforce.

Oversee the advisory services related to all phases of human resources programs administration.

Thank you for your patience and cooperation in this matter.

IAF, Tab 6, p. 24.

<u>Contentions of the Parties</u>

The appellant alleges that the agency committed a prohibited personnel practice (PPP) under 5 U.S.C. § 2302(b)(4); improperly denied him veterans' preference for the recruitment at issue in violation of 5 U.S.C. § 3330a(1)(A);[1] and denied him the right to compete for the position under 5 U.S.C. § 3304(f)(1).

The agency contends in response that the Board lacks general jurisdiction over PPP claims under 5 U.S.C. § 2302(b)(4) and that veterans preference simply does not apply for merit promotions such as the one at issue. The agency further has argued that corrective action is unwarranted for the appellant's right to compete VEOA claim under 5 U.S.C. § 3304(f)(1) because undisputed evidence

[1] It is not completely clear from the appellant's submissions that he wishes to pursue a veterans' preference claim under 3330a(a)(1)(A), but the possible claim is analyzed out of an abundance of caution.

supports a finding that the agency ultimately reviewed the appellant's application properly on the merits as § 3304(f)(1) requires.

Analysis and Findings

As an initial matter, I find that the agency is correct in positing that the Board lacks jurisdiction to adjudicate whether the agency committed a prohibited personnel practice under 5 U.S.C. § 2302(b)(4). While the Board exists to protect the merit systems, no statute or regulation has vested specific authority in the Board to review this PPP claim. It must therefore be **DISMISSED** for lack of jurisdiction.

With respect to the appellant's VEOA denial of veterans' preference claim under 5 U.S.C. § 3330a(a)(1)(A), in order to establish the Board's jurisdiction over such a claim, the appellant must: (1) establish that he exhausted his Department of Labor remedy; and (2) make non-frivolous allegations that (i) he is a preference eligible within the meaning of the VEOA, (ii) the actions at issue occurred on or after the October 30, 1998 enactment date of the VEOA, and (iii) the agency violated his rights under a statute or regulation related to veterans' preference. "Preference eligible" is defined at 5 U.S.C. § 2108(3). To meet requirement (iii), the appellant need not identify a specific statute or regulation but must allege that the agency violated his veterans' preference rights.

It is undisputed that the appellant is preference eligible and properly exhausted this claim with DOL before filing this appeal. However, the record demonstrates that the recruitment at issue was a merit promotion for which the agency accepted applications from outside its workforce. I find that the VEOA does not require for veterans to receive preference over other candidates for this type of recruitment. Instead, 5 U.S.C. § 3304(f)(1) only demands that preference eligible veterans be permitted to compete on the same footing as other applicants. Since the appellant has not identified any statutory right to preference for this

recruitment, and I am aware of none, this claim falls outside the Board's VEOA jurisdiction, and must be DISMISSED for lack of jurisdiction.

As noted above, VEOA also provides for a second type of claim. At 5 U.S.C. § 3304(f)(1), it states that preference eligibles or veterans who have been separated from the armed forces under honorable conditions after 3 years or more of active service may not be denied the opportunity to compete for vacant positions for which the agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures. Such persons have the right to file a complaint with the Secretary of Labor under 5 U.S.C. § 3330a(a)(1)(B) and to subsequently file an appeal with the Board.

To establish the Board's VEOA jurisdiction over an appeal under 5 U.S.C. § 3330a(a)(1)(B) and 5 U.S.C. § 3304(f)(1), an appellant must: (1) establish that he exhausted his Department of Labor remedy; and (2) make non-frivolous allegations that (i) he is a veteran described in 5 U.S.C. § 3304(f)(1) or a preference eligible as described above, (ii) the agency denied him the opportunity to compete under merit promotion procedures for a vacant position for which the agency accepted applications from individuals outside its own workforce, and (iii) the denial occurred on or after the 5 December 10, 2004 enactment date of the law that provides this right.

I find corrective action under 5 U.S.C. § 3304(f)(1) is unwarranted because the undisputed record supports a finding that the appellant was ultimately granted the right to compete for this vacancy after initial missteps in handling his application. While the agency plainly erred in initially finding the appellant unqualified for the position, the agency presented unrebutted evidence that this error was corrected through a merit review of the appellant's application by the same staffing specialist who reviewed all the other applications. This review resulted in the staffing specialist finding that the appellant was qualified for the position, but not among the small group of highest qualified applicants to be referred to the selecting official. The appellant appears to disagree with the

staffing specialist's conclusions about the merits of his application, but that dispute goes beyond the Board's limited VEOA jurisdiction in this situation. The requisite analysis ends once it is established that the agency reviewed the appellant's application on the same footing as the other applicants. Thus, the requirements of 5 U.S.C. §3304(f)(1) are facially satisfied and corrective action under VEOA must be denied.

## DECISION

The appellant's prohibited personnel practice claim under 5 U.S.C. § 2302(b)(4) as well as the appellant's VEOA denial of veterans' preference claim under 5 U.S.C. § 3330a(1)(A) are **DISMISSED** for lack of jurisdiction. Corrective action for the appellant's VEOA claim under 5 U.S.C. § 3330a(a)(1)(B) and 5 U.S.C. § 3304(f)(1) is also **DENIED**.

FOR THE BOARD: /S/

Brian Bohlen
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **June 22, 2021**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The

paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

**BOARD REVIEW**

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

**NOTICE OF LACK OF QUORUM**

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross

petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

**Criteria for Granting a Petition or Cross Petition for Review**

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the

documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5

C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after this decision becomes final under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3)** **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within **60 days** of the date this decision becomes final under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1388

**Short Case Caption:** Brimer v. Navy

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 9,557 words.
- ☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- ☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 05/06/2024

Signature: /s/Daniel C. Cooley

Name: Daniel C. Cooley